UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| INDIANA RECYCLING & RENEWABLE FUELS, LLC d/b/a ILLINOIS RECYCLING & RENEWABLE FUELS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:16-cv-272 |
| EARTH MANAGEMENT SERVICES OF ILLINOIS, INC.; CHICAGO HEIGHTS LAND MANAGEMENT, INC.; and ROBERT FOX, | ) ) ) ) | Judge Joseph S. Van Bokkelen |
| Defendants. | ) ) | Magistrate Judge Paul Cherry |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

## TABLE OF CONTENTS

Legal Standard For Motion to Dismiss…………………………………………… pp. 1-2

Applicable Law………………………………………………………………..... pp. 2-3

**I.     Count I Should Be Dismissed Because The Complaint Establishes**……... pp. 3-8

That There Is No Contract That Can Be Enforced………………………… pp. 3-8

Factual Background……………………………………………………… pp. 3-5

Legal Standards….……………………………………………………… pp. 5-8

**II.    Count II Should Be Dismissed In Its Entirety For Failure To State A
Claim Upon Which Relief Can Be Granted**………….......................... pp. 9-16

A.     Count II fails to state a claim for fraud or perjury………………….. pp. 9-13

B.     Count II fails to state a claim for tortious interference………........... pp. 13-16

**III.   The Prayer For Equitable Relief In Count II Should Be Dismissed**…….. pp. 16-21

A.     Illinois law would not permit the transfer at this time……................ pp. 16-17

B.     The Equitable Relief sought would require that the Illinois
Environmental Protection Agency grant the permit and Plaintiff
does not name it as a party………………………………………… pp. 17-18

C.     As a matter of public record, Defendant has no
"Operating Permit" for the Property………………………………… pp. 18-19

D.     The EPA Certification for Operating a Waste Management Facility
grants no protectable or transferable property rights or interests……. pp. 19-21

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| INDIANA RECYCLING & RENEWABLE FUELS, LLC d/b/a ILLINOIS RECYCLING & RENEWABLE FUELS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:16-cv-272 |
| EARTH MANAGEMENT SERVICES OF ILLINOIS, INC.; CHICAGO HEIGHTS LAND MANAGEMENT, INC.; and ROBERT FOX, | ) ) ) ) | Judge Joseph S. Van Bokkelen |
| Defendants. | ) ) | Magistrate Judge Paul Cherry |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants' Motion to Dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) (Fed.R.Civ.Pro. Rule 12(b)(6)) seeks dismissal of both counts, Count I for breach of contract and Count II for fraud and tortious interference with a business interest. The motion also seeks dismissal, with prejudice, of the prayer for equitable relief asserted in Count II.

**Legal Standards For A Motion To Dismiss.**

Rule 12(b)(6) provides, "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted." Fed.R.Civ.Pro Rule 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

1

draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  A complaint need not contain detailed factual allegations to meet that standard, but it must go beyond mere labels and conclusions, and must "be enough to raise a right to relief above the speculative level."  *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 5344, 537-38 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

When the allegations are "not only compatible with, but indeed [are] more likely explained by lawful" conduct, the complaint fails to state a plausible claim for relief.  *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 612 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 680).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678.  A court is not bound to accept as true a legal conclusion couched as a factual allegation.  *Id.*

Whether a complaint states a plausible claim for relief, *Iqbal-Twombly* requires a two-pronged approach in which a court: (1) first identifies the well-pleaded factual allegations by discarding the pleadings that are "no more than conclusions" and (2) then determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement to relief."  *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

**Applicable Law.**

As an initial matter, Defendants assert that Illinois law governs this dispute.  The land at issue is located at 1301 State Street, Chicago Heights, Cook County, Illinois ("Real Estate").

The purported agreements attached as Exhibit A and Exhibit D to the Complaint each contain Illinois choice of law clauses.  (*See* Complaint Ex. A at p. 9 ¶ 15.07 and Ex. D at p. 8 ¶ 16.07). The transactions and occurrences alleged in the Complaint happened within the State of Illinois. Accordingly, this Court should apply Illinois law in accordance with the Rules of Decision Act (28 U.S.C. § 1652), *Erie* Doctrine and choice of law principles.

## I.      Count I Should Be Dismissed Because The Complaint Establishes That There Is No Contract That Can Be Enforced.

### Factual Background.

Plaintiff starts with the notion that it and Chicago Heights Land Management ("Land Management") entered into a contract for the sale and purchase of 27 acres of vacant land located 1301 State Street, Chicago Heights, Illinois, on September 21, 2009.  (Complaint at p. 2-3 ¶¶ 17-20, Ex. A at p. 1).  This contract is purportedly Exhibit A to the complaint.  Yet, Exhibit A is not signed by the parties and contains a closing date of March 30, 2010.  (Complaint Ex. A at p. 1 and 9).

Next, Plaintiff alleges that Land Management refused to close but agreed to extend the closing date.  (Complaint at p. 3 ¶¶ 19-20).  Yet, Plaintiff cannot find this second purported agreement.  (Complaint at p. 3 ¶ 21).  Rather, Plaintiff at Exhibit C attaches a copy of a check dated August 8, 2010 in the amount of $50,000.00.  (Complaint at p. 3 ¶ 21, Ex. C).  The Complaint is silent regarding how long this purported extension would last or when the closing date for the Second Real Estate Contract would have occurred.

According to Plaintiff, Land Management refused to close again on the missing Second Real Estate Contract, but, instead, extended the closing date, this time to December 31, 2015. (Complaint at p. 3 ¶¶ 22-23).  Proof of this assertion is a contract identified as Exhibit D to the complaint that now covers approximately 55 acres of land, still known as 1301 State Street,

Chicago Heights, Illinois.  (Complaint at p. 3 ¶ 24, Ex. D).  Exhibit D is dated September 21, 2015, six years after the first (unsigned) contract.  (Complaint Ex. A and Ex. D).  The purported purchaser in Exhibit D is Midwest Renewable Resources, LLC – not Plaintiff.  (Complaint Ex. D at p. 1 and 9).  Yet, Plaintiff alleges that Exhibit D created "additional terms and obligations on IRRF."   (Complaint at p. 3 ¶ 24.).   Exhibit D contains no reference to Plaintiff, IRRF whatsoever.  (Complaint Ex. D).

Plaintiff alleges that a copy of a check, attached as Exhibit E, related to the "Second Real Estate Contract" (again, not provided).  (Complaint p. 3 ¶ 25, Ex. E).  The copy of the check contained in Exhibit E is dated August 20, 2015 in the amount of $50,000.00.  Exhibit E also contains a company resolution of Midwest Renewable Resources, LLC authorizing the purchase of the Real Estate for that entity.  (Complaint Ex. E).

In Exhibit D, at paragraph 16.02, contains a merger clause, which represents that it is the final expression of the parties' transaction regarding the real estate.  (Complaint Ex. D at p. 7 ¶ 16.02).  Specifically, that Exhibit D provides, "[t]his Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, and the same may not be amended, modified or discharged nor may any of its terms be waived except by an instrument in writing signed by the party to be bound thereby the final expression of the parties' transaction regarding the real estate."  *Ibid.*  Exhibit D also includes an Addendum, which, at paragraph 7.04, provides that Plaintiff would not be entitled to ownership of the EPA waste permit described in the complaint until closing.  (Complaint Ex. D at p. 11 ¶ 7.04).  The Addendum also provides for a closing date of January 14, 2016.  (Complaint Ex. D at p. 11).

Next, Plaintiff alleges that Land Management agreed to extend the closing dealing of the Third Real Estate Contract "up to and including July 5, 2016."  (Complaint at p. 3 ¶ 27).  Proof

of this assertion is an email, attached as Exhibit F, dated January 5, 2015 – more than 9 months

before the alleged Third Real Estate Contract was signed.  (Complaint Ex. F).  Plaintiff further

alleges this email is in fact a written agreement representing the Fourth Real Estate Contract.

(Complaint at p. 3 ¶ 27).  The January 5, 2015 email to Jim Ventura is from Thomas Planera,

counsel for Defendants.  (Complaint Ex. F).  Exhibit F states that:

> I spoke with Bob.  He instructed that when you deposit the $50,000 into my
> escrow account I will draft the option to buy.  Alternatively, you can have your
> attorneys draft the option for me to review.
>
> The terms of the option should state that CHLM will sell you the land for
> $3,200,000 as a right of first refusal.  Regardless of any offer CHLM revives to
> sells the land, IRRF will have the right to close on the land for more than the
> $3.2M (less the $50K).  The term will be for 180 days.

(Complaint Ex. F).

The Court should note that 180 days after January 5, 2015 was Saturday, July 4, 2015.

In exchange for this purported extension, Plaintiff alleges that it paid $50,000.00.

(Complaint at p. 4 ¶ 28).  Proof of this payment, attached as Exhibit G, are two deposit slips: (1)

dated October 9, 2008 for check number 1011 in the amount of $10,000 and (2) dated August 17,

2010 for check number 1012 in the amount of $50,000.00.  (Complaint at p. 4 ¶ 28 Ex. G).

Plaintiff further alleges that it demanded the Fourth Real Estate Contract – email – to close, but

Land Management refused.  (Complaint at p. 4 ¶ 29).  No written demand letter is attached to the

Complaint.

### Legal Standards

The elements of breach of contract under Illinois law are: (1) the existence of a valid and

enforceable contract; (2) performance by the plaintiff; (3) defendant's breach of contract; and (4)

injury to the plaintiff.  *Gallagher Corp. v. Russ*, 309 Ill.App.3d 192, 199, 721 N.E.2d 605, 611

(1st Dist. 1999).  The party seeking to enforce an agreement has the burden of establishing the

existence of the agreement.  *Reese v. Forsythe Mergers Group, Inc.*, 288 Ill.App.3d 972, 979, 682 N.E.2d 208, 213 (2d Dist. 1997).  In alleging breach of contract by a defendant, a plaintiff should also allege the factual circumstances surrounding the formation of the agreement, specifically, the offer, acceptance and existence of valuable consideration.  *Pollack v. Marathon Oil Co.*, 34 Ill.App.3d 861, 864, 341 N.E.2d 101 (1976).  Price is an essential element of every contract for the transfer of property and must be sufficiently definite or capable of being ascertained from the parties' contract.  *Crestview Builders, Inc. v. Noggle Family LP*, 352 Ill.App.3d 1182, 1185, 816 N.E.2d 1132, 1134 (2d Dist. 2004).

Generally, only a party to a contract, or one in privity with a party, may sue for breach of contract.  *Sabath v. Mansfield*, 60 Ill.App.3d 1008, 1016, 377 N.E.2d 161, 168 (1st Dist. 1978).  The mere fact that a person was injured by a breach of contract or that he acted in reliance on it does not create a right to pursue a claim for breach of contract which he otherwise would not have had.  *Id.* (citing 4 Corbin on Contracts § 779B (1951)).

Interpretation of contractual language is a question of law for the court to decide.  *Radkiewicz v. Radkiewicz*, 353 Ill.App.3d 251, 256, 818 N.E.2d 411, 415 (2d Dist. 2004).  Where an exhibit contradicts the allegations in the complaint, the exhibit controls, even when considering a motion to dismiss.  *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("[w]here an exhibit and the complaint conflict, the exhibit typically controls.").  When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party.  *Bogie*, 705 F.3d at 609.  Such an analysis is particularly pertinent in contract disputes in which a plaintiff

attaches a contract to the complaint and makes an allegation that the contract on its face clearly disputes. *Id.*

An action for specific performance of a land contract is sustained by allegations of ultimate facts showing refusal on the part of the seller to comply with the contract and a tender by the purchaser of the full amount required to entitle him to a deed pursuant to the contract. *Arnold v. Leahy Home Bldg. Co., Inc.*, 95 Ill.App.3d 501, 507, 420 N.E.2d 699, 703 (2d Dist. 1981). The rule is that before specific performance will be awarded all conditions of the contract must be met by the party seeking performance. *Id.* Purchasers have no right to impose conditions not contained in the contract of sale and if they do so, they fail to show they complied with the terms of the contract and are ready, able and willing to do the acts required in the contract. *Id.* A party is not entitled to specific performance if the circumstances of a course of conduct clearly show an abandonment of the contract by him. *Id.*

In this case, Plaintiff has failed to allege any valid and enforceable real estate contract between itself and any Defendant. The First Real Estate Contract is unsigned, not dated and ended on March 30, 2010. (Complaint Ex. A.). The Second Real Estate Contract is not attached to the Complaint by Plaintiff's own admission. (Complaint at p. 3 ¶ 21). Nor for that matter are any of the terms of this purported agreement alleged in the Complaint. The Third Real Estate Contract is not an agreement between Plaintiff IRRF and any Defendant; but, rather, an agreement between Midwest Renewable Resources, LLC and Land Management. (Complaint Ex. D). The Fourth Real Estate Contract is not a contract at all, but, rather, an email discussing terms for an option dated nine months before the third agreement. (Complaint Ex. F).

Even if this Court were to re-characterize these agreements by placing them in chronological and logically consistent order, the Plaintiff still fails to allege a valid and

7

enforceable contract.  Exhibit D lapsed by its own terms on January 14, 2016.  (Complaint Ex. D

at p. 11).  Nowhere in the Complaint is it alleged that Plaintiff was ready, willing and able to

close at that time.  Further, the $50,000.00 that Plaintiff seeks to recover, presumably represented

by Exhibit E, was a non-refundable option that Plaintiff forfeited when it failed to close.  Exhibit

D provides:

> The sum of Fifty Thousand and No/100 Dollars ($50,000.00) which shall be
> delivered in certified funds concurrently with the execution of this Agreement.
> Purchaser acknowledges that the Deposit is non-refundable and is consideration
> for Seller granting the Purchaser an exclusive right to purchase the property
> pursuant to the terms herein during the term of this Contract.

(Complaint Ex. D at p.1).

That option, which counsel for Defendants and James Ventura reference in Exhibit F,

could not possibly have extend the closing deadline to July 5, 2016 as alleged by Plaintiff.

(Complaint at p. 3 ¶ 27).  We know this is so because the Third Real Estate Contract – dated nine

months later – contains a merger clause representing the final understanding of the parties.

(Complaint Ex. D at p. 7 ¶ 16.01).

Moreover, Exhibit D terminated by its own terms on the closing date.  In paragraph 16.03

provides, "All representations, warranties, agreements, indemnifications and obligations of the

parties shall expire as of the Closing."  (Complaint Ex. D at p. 8 ¶ 16.03).  As previously noted,

the closing date, pursuant to the Addendum, occurred on January 14, 2016.  (Complaint Ex. D at

p. 11).  Therefore, after January 14, 2016, there existed no valid and enforceable agreement

between Plaintiff and Land Management.  Any purported agreement must be in writing pursuant

to Illinois Statute of Frauds.  (740 ILCS 80/2).  Accordingly, on the face of the Complaint,

Plaintiff fails to allege facts sufficient to demonstrate a breach of contract by any Defendants.

## II. Count II Should Be Dismissed In Its Entirety For Failure To State A Claim Upon Which Relief Can Be Granted.

In Count II, plaintiff purports to state causes of action for fraud, perjury and tortious interference with their business interest. Count II should be dismissed because the Complaint fails to sufficiently state claims for fraud, perjury or tortious interference.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim on which relief may be granted. Fed.R.Civ.Pro. Rule 12(b)(6). *See* supra, at p. 1-2.

### A. Count II fails to state a claim for fraud or perjury.

To state a claim under the federal notice pleading system, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). The complaint "does not need detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, supra, 550 U.S. at 555-57; *Iqbal*, supra, 556 U.S. at 678 (2009). It does not suffice if the complaint offers only "labels and conclusions," "naked assertions," or a "formulaic recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57 (emphasis added)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When the plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint does not satisfy the minimal pleading burden of Rule 8 of the Federal Rules of Civil Procedure." *Id.* at 679.

9

Under Fed.R.Civ.Pro. Rule 9, claims of fraud and misrepresentation are subject to heightened pleading standards.  Rule 9 specifically provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.Pro. 9(b); *Vicom, Inc. v. Harbridge Merchant Services*, 20 F.3d 771, 777 (7th Cir. 1993); *Levine v. Prudential Bache Properties*, 855 F.Supp. 924, 929 (N.D. Ill. 1994).  Some claims – like fraud – may have a stigmatizing effect on defendants and their reputations.  *Uni-Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992).  Requiring that such claims be pleaded with particularity (1) ensures that the defendants have fair notice of plaintiff's claim, (2) helps safeguard the defendants from spurious accusations and resulting reputational harm, (3) reduces the possibility that a meritless fraud claim can remain in a case, by ensuring that full and complete actual allegations is not postponed until discovery and (4) protects defendants against "strike" suits.  *Vicom, Inc*, 20 F.3d at 777; *Uni-Quality Inc.*, 974 F.2d at 924.

A party must plead each of the elements of fraud with particularity.  Fed.R.Civ.Pro. 9(b); *Levine*, 855 F.Supp. at 929; *Vicom, Inc.*, 20 F.3d at 777.  When pleading fraud, a claimant must allege more than mere conclusory allegations of fraud or the technical elements of fraud.  The common law elements of fraud are:  (1) false representation or admission of material fact; (2) knowledge of or belief in its falsity by person making it; (3) belief in the truth by receiver of the statement; (4) intent that a statement will be acted upon; and (5) a detrimental reliance by a person who was deceived.  *TLMS Motor Corp. v. Toyota Motor Distributors, Inc.*, 912 F.Supp. 329, 334 (N.D. Ill. 1995).  The "particularity" requirement of Rule 9(b) applies not only to claims expressly denominated as "fraud allegations," but also in claims that "grounded in fraud" or that "sound in fraud."  *See Uni-Quality, Inc.*, 974 F.2d at 923.

Here, Plaintiff's Complaint allegations concerning fraud violate Rule 9's heightened pleading requirements to allege fraud with specificity.  Plaintiff alleges, for example, that:

> Earth Management and Robert Fox acted in concert to transfer the Certification for Operating a Waste Management Facility originally held by IRRF. (Complaint at p. 4 ¶ 31);

> Earth Management and Robert Fox made false statements purporting to act on behalf of IRRF to the Illinois Environmental Protection Agency…. (Complaint at p. 4 ¶ 35);

> Earth Management and Robert Fox additionally made false threats, knowing the statements to be false when made…. (Complaint at pp. 4-5 ¶ 36);

> Earth Management and Robert Fox's intentional misrepresentation materially interfered with…. (Complaint at p. 5 ¶ 37);

> Earth Management and Robert Fox made false and misleading statements…. (Complaint at p. 6 ¶ 40); and

> Earth Management and Robert Fox's perjured themselves to the Illinois Protection Agency with the intent to deceive….  (Complaint at p. 6 ¶ 41).

These allegations amount to mere conclusory allegations of fraud.  Rule 9(b) requires the pleader to fill in "the who, what, when, where and how" of the alleged scheming.  *Uni-Quality, Inc.*, 974 F.2d at 923; *Vicom, Inc.*, 20 F.3d at 777.  In the context of fraud claims, the pleader must allege (1) the time, place and content of the false representation or omission, and explain how they were fraudulent; (2) the identity of the person making the misrepresentations; (3) how the misrepresentations misled the plaintiff; and (4) what the speaker gained from the fraud. *Vicom, Inc.*, 20 F.3d at 777; *TLMS Motor Corp.*, 912 F.Supp. at 334.

However, all of the fraud allegations in the Complaint lack any substance – alleging for example, that Earth Management and Robert Fox acted "in concert", "made false statements purporting to act", "made false threats", "material misrepresentations", "made false and misleading statements", and "perjured themselves" "with intent to induce" and other parties reasonably "reasonably relied" (*See* Complaint at pp. 4-6 ¶¶ 31, 35, 36, 37, 40, 41).

11

Moreover, where the plaintiff alleges that multiple defendants committed a fraud, the complaint may not simply lump all the defendants together, but must specify which defendant committed which allegedly fraudulent act.  *Vicom, Inc.*, 20 F.3d at 778; *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994) ("[D]efendants are entitled to be apprised of the roles they each played in the alleged scheme, and absent a compelling reason, a plaintiff is normally not entitled to treat multiple corporate defendants as one entity.").  Once more, here, Plaintiff had made no attempt to allege with any specificity who in connection with Earth Management purportedly committed the fraudulent acts; the business entity Earth Management is lumped together with Robert Fox; no one from the Illinois EPA is personally identified; no specific dates or modes of communication are provided; no specific statements are identified; no effort is given to explain the "reasonable reliance"; and no effort is given to explain how the defendants purportedly gained from the alleged deception.

Very simply, the Complaint allegations are woefully lacking and violate Rule 9. Defendants cannot possibly be expected to answer or defend against such a complaint. Therefore, Defendants request that this Court dismiss Complaint Count II.

Moreover, this Court should reject and dismiss Plaintiff's Count II allegations concerning perjury.  For example, Plaintiff alleges that "Earth Management and Robert Fox perjured themselves to deceive the Illinois Protection Agency."  (Complaint at p. 6 ¶ 41).  Defendants maintain that the allegation of perjury is utterly baseless and strenuously object to Plaintiff's reckless assertion of perjury.  However, for purposes of this Motion to Dismiss, there is simply no civil cause of action for perjury.  Perjury is strictly a matter for criminal enforcement.  *See Dean v. Kirkland*, 301 Ill.App.495, 506, 23 N.E.2d 180, 186 (1st Dist. 1939) (no action lies at common law for damage sustained by reason of perjury); *John Allen Co. v. Brandow*, 59

Ill.App.2d 328, 336, 207 N.E.2d 339, 343 (3d Dist. 1965) ("Perjury if proven to be involved in legal proceedings, is punishable in prosecution under criminal procedures. Civil actions following such litigation have not be favored by the courts…"); *Traveler v. CSX Transp., Inc.*, No. 1:06CV56, 2007 WL 1830807, at *2 (Mag. J. Roger B. Cosbey, N.D. Ind. June 22, 2007) (commenting that perjury in whatever form, falls within the sole province of the United States Attorney, and it is up to that office, not a private citizen, to prosecute (or not prosecute), such alleged conduct); *Liddell v. Smith*, 345 F.2d 491, 494 (7th Cir. 1965) ("The general rule, which is followed by both the Federal Courts and the courts of the State of Illinois, is that in the absence of statute, no action lies to recover damages caused by perjury or subornation of perjury, whether committed in the course of, or in connection with, a civil action or suit, a criminal prosecution, or other proceeding, and whether the perjurer was a party to or a witness in the action or proceeding."). Accordingly, to the extent that Plaintiff may be attempting to plead an action for civil perjury in Count II, it should be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

**B.      Count II fails to state a claim for tortious interference.**

In Count II, Plaintiff also alleges an action against Defendants Earth Management and Fox that Plaintiff has labelled "Tortious Interference with Business Interest." There is no such cause of action. The closest possible causes of action are intentional interference with contractual relationships or intentional interference with prospective economic advantage – neither of which Plaintiff has properly pleaded in the sparse allegations of the Complaint. Plaintiff's only allegation on this issue is that "Earth Management and Robert Fox's activity described in this Complaint for Damages prevented IRRF from successfully establishing a business relationship with those who have pledged business to IRRF at the Real Estate."

(Complaint at p. 6 ¶ 41).  The allegations are entirely insufficient and the claim lacks merit as a matter of law.

The elements of the tort of intentional interference with contractual relations are (1) the existence of a valid and enforceable contract between the plaintiff and another party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other party, caused by the defendant's wrongful conduct; and (5) damages. *HPI Healthcare Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 154 (1989); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir.2003).  A necessary prerequisite to the maintenance of an action for intentional interference with the contract is the defendant's intentional and unjustified inducement of a breach of the contract.  *FutureVision, Inc. v. Dahl*, 139 Ill.App.3d 61, 66 (1985).

As stated, Plaintiff's only allegation on this issue is that "Earth Management and Robert Fox's activity described in this Complaint for Damages prevented IRRF from successfully establishing a business relationship with those who have pledged business to IRRF at the Real Estate."  (Complaint at p. 6 ¶ 41).  Here, Plaintiff has failed to allege any of the necessary allegations of a claim tort of intentional interference with contractual relations.  Specifically, Plaintiff has failed to identify with any level of detail the first element (the existence of a valid and enforceable contract with a third party party); failed to allege the second element (Defendant's awareness of the any contractual relationship); failed to allege the third element (Defendant's intentional and unjustified inducement of a breach of the contract); failed to allege the fourth element  (a subsequent breach by the third party, caused by the defendant's wrongful conduct) and failed to identify any actual damages, merely asserting a naked allegation that the

"tortious conduct caused damage to IRRF".  (Complaint at p. 7 ¶¶ 44-45).  Very simply, Plaintiff has not alleged a valid claim for intentional interference with contractual relations.

Similarly, Plaintiff has failed properly allege a claim for intentional interference with prospective economic advantage.  To state a claim of intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting  from the interference.  *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 568 N.E.2d 870, 878 (1991); *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007).

Again, Plaintiff's allegations (*i.e.*, Defendants Earth Management and Robert Fox "prevented IRRF from successfully establishing a business relationship with those who have pledged business to IRRF at the Real Estate") are legally insufficient to state a claim for intentional interference with prospective economic advantage.  First, Plaintiff's allegations are vague at best and mostly limited to ill-defined pronouns such as unidentified potential "business relationships" and "those who have pledged business."  Plaintiff must plead more than bare conclusions about unspecified business opportunities with phantom business partners.  A plaintiff must allege a business expectancy with a specific third party.  *Ali*, 481 F.3d at 946 (citing *Schuler v. Abbott Labs*, 265 Ill.App.3d 991, 994, 639 N.E.2d 144, 147 (1st Dist. 1993).

Second, Plaintiff has failed to allege the second element of the cause of action that Defendants had knowledge of these business relationships.  Plaintiff fails to even identify those relationships in the Complaint.

Third, Plaintiff has failed to allege that Defendants' intentionally and unjustifiably interfered with the "business relationships" of "those who have pledged business" that prevents

the realization of the business expectancy.  For example, Plaintiff broadly alleges intentional misconduct "to deceive the Illinois Environmental Protective Agency."  (Complaint at p. 6 ¶ 41). However, such broad allegations of purported misconduct are insufficient to plead the necessary element that Defendants acted with specific intent to directly interfere with Plaintiff's unidentified "business relationships."  Plaintiff must allege more than as an incidental consequence of some alleged wrongdoing it supposedly lost potential business. *See Menasha Corp. v. News America Marketing In-Store, Inc.*, 238 F.Supp.2d 1024, 1035 (N.D. Ill. 2003) (the plaintiff has the burden to allege facts establishing how the defendant acted with intent to interference in the prospective economic relationship).

Fourth, Plaintiff has failed to identify any actual damages. It insufficiently alleges in conclusory fashion that "tortious conduct caused damage to IRRF."  (Complaint at p. 7 ¶¶ 44-45).

Finally, Defendants submit that for the same reasons that Plaintiff's fraud allegations should be dismissed due to lack of specificity, so too should Plaintiff's intentional interference allegations be dismissed.  Since Plaintiff seeks to allege fraudulent activity as a basis for an intentional interference claim, it too is subject to the requirements of Fed.R.Civ.Pro. Rule 9 ("a party must state with particularity the circumstances constituting fraud…").

## III.    The Prayer For Equitable Relief In Count II Should Be Dismissed.

### A.    Illinois law would not permit the transfer at this time.

Plaintiff seeks an Order compelling Defendants to transfer what they call a "Certification for Operating a Waste Management Facility."  Plaintiff suggests in Count II that the certification is an operating permit.  In point of fact, it is not. The certification form allows a background check of an applicant seeking a permit.  (*See* Section D, infra, at pp. 19-21).  However, Illinois

law is clear that there can be no "Operating Permit" issued to anyone but the owner or operator of a waste treatment facility.  As such, Plaintiff does not qualify.

The Illinois Environment Protection Agency ("Ill. E.PA.") has exclusive jurisdiction for administering permits.  (415 ILCS 5/4).  Under the Act only an "owner" or an "operator" may qualify for a waste disposal permit at a facility.  (415 ILCS 5/39(a) and (c)).  Under the regulations an "owner" is one who holds an interest in land and includes a leasehold interest.  (35 Ill. Admin. Code § 807.104).  An "operator' is one who is conducting a waste treatment or waste disposal operation.  *Id.*

Here, in Count I Plaintiff admits that Land Management is an owner.  However, Plaintiff does not allege that it ever lawfully owned or leased the real estate.  Nor does Plaintiff allege that it is conducting a waste facility.  Nor does Plaintiff allege that it is an "operator' under the Act.  Therefore, Plaintiff is not eligible under Illinois law to have a permit in its name.  This Court, therefore, is not able to grant relief by ordering Defendants to transfer the permit because Plaintiff does not allege sufficient facts to establish its eligibility to hold the permit under Illinois law.  The Illinois EPA would necessarily deny any application for a transfer of the permit to Plaintiff.

**B.   The equitable relief sought would require that the Illinois Environmental Protection Agency grant the permit and Plaintiff does not name it is as a party.**

Plaintiff has failed to name the Ill. EPA as a party and, therefore, cannot obtain the equitable relief it seeks.  Under the procedure for transferring the operator's permit that Plaintiff seeks, the transfer must be approved by the Ill. EPA.  (Ill. Admin. Code § 807.221).  Since the permit cannot be transferred without the approval of the Ill. EPA, the agency will have to be a party to this action so that Plaintiff can obtain the equitable relief it seeks.

Therefore, the Plaintiff's claim for equitable relief in Count II should be dismissed.

**C.      As a matter of public record, Defendant has no "Operating Permit" for the property.**

In a 12(b)(6) motion this Court can take judicial notice of matters on the public records. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion to a motion for summary judgment.); *Cali v. East Coast Aviation Serv., Ltd.*, 178 F.Supp.2d 276 (E.D.N.Y. 2001) (taking judicial notice of state and federal agency documents); *see also* Fed.R.Evid. 201(b).  Here, Plaintiff has failed to attach the "operating" permit to its Complaint.  It also failed to attach the documents by which the construction permit was transferred.  However, those documents are public record, and are referenced as Defendants Exhibits 7-14 to this Memorandum of Law in Support of Motion to Dismiss, consisting of: (i) the original permit for construction, (ii) the transfer application, (iii) the March 19, 2014 EPA transfer notice to Land Management, and (iv) other related documents submitted to the Illinois EPA.  This Court may take judicial notice of Exhibits 7-14 because they are public records.  (*See Henson*, supra., 29 F.3d at 284).

As a matter of public record, the Defendant does not have an "operating permit" for the property.  Rather, it once had a permit for construction and development of a municipal waste facility.  The permit in question, at page 2, paragraph A.1., states:

> This permit is for construction and development only.  No waste may be received at the site until an operating permit is issued by the Illinois EPA, Bureau of Land, Permit Section. After completion of development, the permittee shall submit an application for an operating permit to the Illinois EPA containing all applicable construction test results and reports.

(Exhibit 7 at p. 2 ¶ A.1).

The EPA permit was issued on October 7, 2011 to Plaintiff for construction, not operation, of a waste management facility under Permit No. 2011-149 DE.  (Exhibit 7 at p. 1).  It expressly provides that it is not an operating permit. ("This permit is for construction and development only.") (Exhibit 7 at p. 2, ¶ A.1.).   In November 2013, Defendant, Land Management, not Fox or Earth Management, applied for a transfer of the construction permit. The application for the transfer expressly refers to the construction permit (Permit No. 2011-149 DE issued October 7, 2011), nothing else.  (*See* Exhibit 8).  The transfer form (Application for the Transfer of a Solid Waste Permit (LPC-PA7)) was signed by M. L. Smith, a vice president of Plaintiff.  (*See* Exhibit 9, at p. 2, Letter dated October 4, 2013 from M. L. Smith to T. Dragovich of Ill. EPA).  Along with the transfer form, Plaintiff submitted the Certification of Authenticity of Official Forms, signed by M. L. Smith, as manager, on November 25, 2013. (*See* Exhibit 10). The transfer steps were taken by Plaintiff because on October 7, 2013, the Illinois EPA issued a Notice of Incompleteness to Plaintiff.  (*See* Exhibit 11, Ill. EPA Notice of Incompleteness dated October 7, 2011 by R. Bernoteit, at p. 1 ¶ 3(a)).  This Notice informed Plaintiff that since no construction had commenced on the site, the construction permit "shall expire two years after the date of issuance unless development has begun within that period".  (Exhibit 11 at p. 1 ¶ 3(a)) Plaintiff transferred the permit to Land Management, which timely started the construction, thereby saving the permit from extinction.  (*See* Exhibit 12, Illinois EPA letter dated March 19, 2014, to Land Management).

### D.    The EPA Certification for Operating a Waste Management Facility grants no protectable or  transferable property rights or interests.

In Count II, Plaintiff refers to a phantom Certification for Operating a Waste Management Facility, yet attaches nothing to the Complaint.  However, Defendants present copies.  (*See* Exhibit 13, Ill. EPA 39(i) Certification (for a Person) For Operating a Waste

Management Facility; and Exhibit 14 Ill. EPA 39(i) Certification (for a Legal Entity) For a Waste Management Facility.).  The 39(i) Certifications are nothing more than ministerial release forms authorizing a background check of an applicant.  The plain language of the 39(i) Certification requires pertinent information of the applicant sufficient to identify the transferee, site location and existing permit number.  (Exhibits 13 and 14).  This form does not request any relief from the Illinois EPA.  It is ancillary to the transfer application.  As is apparent from the 39(i) Certifications, the site name, Indiana Recycling, was necessary for the Illinois EPA to identify the project and permit.  At the time, Fox was manager of Earth Management, which had prior experience in waste management per the 39(i) Certification: "This form is for prior experience in operating a waste storage site".  (Exhibit 13 at p. 1 and Exhibit 14 at p. 1).  Fox's signature was required on the form.   (Ill. EPA, 415 ILCS 5/39; 35 Ill. Admin. Code § 807.205(d)).  The 39(i) Certifications simply authorize Ill. EPA to obtain information from the Illinois State Police.  (Exhibit 13 at p. 2 and Exhibit 14 at p. 2).  It is obvious from the text of the 39(i) Certifications that Plaintiff gains no right or interest in an EPA permit.  Thus, an order from this Court directing Defendants to transfer the 39(i) Certifications or fully cooperate in transferring the 39(i) Certifications would be a useless act.  Courts should not engage in issuing orders that offer no relief.  *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (in essence the justiciability requirement "keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action.").

Plaintiff is not entitled to any equitable relief ordering Defendants, Fox and Earth Management, to cooperate or transfer an operating permit because there is no operating permit, and Plaintiff knows this full well.  Further, had the sale closed under the September 21, 2015 real

estate agreement (Complaint Ex. D), the construction permit, as opposed to an operating permit, would have been transferred pursuant to paragraph 7.04 of the addendum to the contract. (Complaint Ex. D at p. 11 ¶ 7.04).  Moreover, the 39(i) Certifications are not transferable to Plaintiff.  It is simply nonsensical for Plaintiff to asset a claim of any kind or nature regarding the 39(i) Certifications.  Hence, no equitable relief, injunctive or otherwise, is feasible on Count II and the same should be dismissed with prejudice as to such relief.

Rule 12 (b)(6) allows dismissal of a claim with prejudice when the plaintiff cannot assert any viable cause of action.  *Brown v. Wabash Nat'l Corp.*, 293 F.Supp.2d 903, 904 (N.D. Ind. 2003).  Here, there is no viable claim based on the Certification for Operating a Waste Management Facility.  Consequently, Plaintiff's demand for equitable relief should be dismissed with prejudice.

Respectfully submitted,

By:     /s/ Parker E. Lawton
                One of the Attorneys for Defendants

Daniel V. Kinsella (ARDC No. 1468472)
David M. Giangrossi (ARDC No. 3124350)
Parker E. Lawton (ARDC No. 6315513)
Schuyler, Roche & Crisham, P.C.
Attorneys for Defendants
180 North Stetson Avenue
Suite 3700
Chicago, IL  60601
Tel:  (312) 565-2400
Fax:  (312) 565-8300
Email: dkinsella@srcattorneys.com
        dgiangrossi@srcattorneys.com
        plawton@srcattorneys.com

908900_2

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned attorney hereby certifies that he caused a true and accurate copy of the foregoing **Memorandum of Law In Support of Motion to Dismiss** to be served via email through the court's CM/ECF system and U.S. Mail on September 14, 2016, upon the following counsel of record:

      Kirk A. Pinkerton
      John R. Terpstra
      Hinshaw & Culbertson, LLP
      Attorneys for Plaintiff
      322 Indianapolis Boulevard, Suite 201
      Schereville, IN 46375
      Tel (219) 864-5051
      Fax (219) 864-5052
      Email:  kpinkerton@hinshawlaw.com
          jterpstra@hinshawlaw.com


        By:  /s/ Parker E. Lawton_____
          One of Defendants' Attorneys

Daniel V. Kinsella
David M. Giangrossi
Parker E. Lawton
Schuyler, Roche & Crisham, P.C.
Attorneys for Defendants
Two Prudential Plaza
180 N. Stetson Avenue, Suite 3700
Chicago, IL 60601
Tel: (312) 565-2400
Fax: (312) 565-8300
Email:  dkinsella@srcattorneys.com
    dgiangrossi@srcattorneys.com
    plawton@srcattorneys.com