UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| INDIANA RECYCLING & RENEWABLE FUELS, LLC d/b/a ILLINOIS RECYCLYING & RENEWABLE FUELS,<br><br>Plaintiff,<br><br>v.<br><br>EARTH MANAGEMENT SERVICES OF ILLINOIS, INC.; CHICAGO HEIGHTS LAND MANAGEMENT, INC.; and ROBERT FOX,<br><br>Defendants. | Case No. 2:16-cv-272<br><br>Judge Joseph S. Van Bokkelen<br><br>Magistrate Judge Paul R. Cherry |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
COUNT II OF COMPLAINT PURSUANT TO RULE 12(b)(6)**

Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(6) ("Defts' Motion to Dismiss") (dkt. #16) and Brief in Support ("Defts' Brief in Support") (dkt. #17) seeking from this Court an order dismissing Plaintiff's Complaint for Damages ("Complaint") (dkt. #1). Count I of the Complaint for breach of contract was dismissed with prejudice by agreed order entered on October 11, 2016.  Accordingly, the allegations in Count I are no longer pending before this Court.  The dismissal order renders those allegations irrelevant to Count II and beyond judicial consideration when analyzing Plaintiff's Response. (dkt. #22).  Under law of the case doctrine a ruling made in an earlier phase of litigation controls the later phases unless a good reason is shown to depart from it.  *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004).  When a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same case.  *AM General Corp. v. DaimlerChrysler Corp.*, 246 F.Supp.2d 1030, 1033 (N.D. Ind. 2003).

Thus, it is the law of the case that there has been no breach of contract. As such, Plaintiff has no ownership claim to the real property in question, either as an owner or a contract-owner. The only issues here involve whether Count II states a cause of action for fraud or tortious interference with a business expectancy and whether Count II states a claim for equitable relief.

The dismissal of Count I necessarily leads to the conclusion that at the time of the alleged actions that make up Count II, November 2013, the Plaintiff had no property right to the real estate in question. Since the Plaintiff had no property right, it could only hold a Permit to develop or operate a waste facility under the Illinois Environmental Protection Act if it was an operator. (415 ILCS 5/4). The Illinois EPA Permit here was issued to permit the development of the property. Thus, in order to be entitled to keep its EPA Permit Plaintiff had to be an "operator" which was developing the property for use as a waste facility.

As a threshold issue Plaintiff completely fails to allege that it was the "Operator" of the subject property as of November 2013. Because it has not alleged that it was the "Operator", and since it can no longer allege that it had any ownership interest as of that date, it does not state a claim for tortious interference or for fraud.

Count II must fail because Plaintiff fails to allege that it had any rights, itself, to keep its EPA Permit in its name.

I.      **Plaintiff's Claim for Equitable Relief Should Be Dismissed With Prejudice**

Plaintiff prays that this Court order that "Defendants transfer, or fully cooperate in transferring, the Certification for Operating a Waste Management Facility to IRRF." Plaintiff therefore is seeking a permanent mandatory injunction.

Defendants' Motion seeks dismissal of that prayer for relief. Dismissal of a prayer for relief is appropriate under Rule 12(b)(6) where the claims in the complaint are not sufficient to support an action for a mandatory injunction. *Baker v. Microbilt Corp.*, 2014 WL 5529195, at 7-

10 (M.D. Penn. 2014).  Even if the underlying Count is not dismissed, or not dismissed with prejudice, the equitable prayer for relief should be dismissed with prejudice.

The Plaintiff then argues that, even without equitable relief, this could award monetary damages to compensate IRRF for its losses.  (Plntf's Response at p. 9).  As set forth below, that is precisely the point Defendants make.  Money damages would be sufficient.

Since the Plaintiff has dismissed Count I with prejudice, it cannot be argued that Plaintiff has any property interest in the Permits.  Any claims would arise out of the torts it alleges.

### A.  Defendants do not assert that the Permit was "mistakenly" issued

Defendants assert that equitable relief is not appropriate here because Illinois law would not permit the transfer the transfer of the existing permit "at this time."   Defendants do not argue that the Permit was mistakenly issued on October 7, 2011. (Defts' Brief in Support Ex. 7).

In its Response Plaintiff misrepresents the Defendants' argument.  (Plntf's Response at 8) Defendants argue that the Illinois EPA could not issue a Permit to IRRF at this time because Plaitnfiff is not, currently, eligible under Illinois law as it is neither an "owner" nor an "operator".

### B.  Plaintiff is not eligible to hold a permit under Illinois law

Because of the dismissal of Count I with prejudice Plaintiff's prayer for injunctive relief can only be based on the assertion that Plaintiff qualifies as an "Operator" under Illinois law.  If Plaintiff is not, then this Court cannot order Defendant to transfer the Permit if Plaintiff does not qualify to hold it.  This Court would be interfering in the enforcement of an Illinois agency.

IRRF is clearly not the owner and has no contract rights to purchase it.  IRRF could only develop or operate a facility on land owned by another if it had a lease or license from the owner of the property to do so.  IRRF does not allege, nor can it, that it has any such agreement, lease or license to develop or operate a facility on the land in question.

Granting equitable relief as to Plaintiff's claim that Defendants wrongfully transferred the 2011 Permit would lead to an anomalous result in which Defendants are compelled to transfer the permit to IRRF, which is not an owner, lessee, licensee or an operator of the facility.

### C.  There are adequate remedies at law

In any action seeking equitable relief it is necessary that the Plaintiff plead and prove that legal remedies would not be adequate.  *Allstate Amusement Co. of Ill. V. Pasinato,* 421 N.E.2d 374 (Ill. App. 1st Dist. 1981); *Plummer v. Am. Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996).  Here the Plaintiff does not even plead that there is no adequate remedy at law.  Under the facts of the case it is clear that the Plaintiff could not.  Moreover, even in federal courts, a prayer for equitable relief must be supported by factual allegations suggesting that there is a threat of irreparable injury and that there is no adequate remedy at law.  Merely reciting "magic words" will not suffice.  There must be a showing that there is an ongoing threat of injury that would put the Defendant on notice of the nature of the claim for injunctive relief. *Randle v. City of Chicago,* 2000 WL 1536070, *4 (N.D. Ill. Oct. 17, 2000).  "The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that in seeking a permanent injunction, [the plaintiff] must prove actual success on the merits rather than the likelihood of success on the merits." *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharma. Servs., Inc.*, 40 F. Supp.2d 987, 991 (N.D. Ill. 1999).

For several reasons Plaintiff is not entitled to equitable relief in this matter.

First, as stated above, Plaintiff does not allege that it was an "Operator" as that term is defined by Illinois law.  Plaintiff does not qualify as an "Owner" under Illinois law.  Since the Complaint does not allege that Plaintiff is an "Operator" under Illinois law this Court cannot

compel the Defendant to transfer a permit that the Plaintiff would be ineligible to hold. *Crossmann Communities, Inc. v. Dean*, 767 N.E.2d 1035, 1040-41 (Ind. App. 2002)

Second, Plaintiff does not plead, nor can it, that there is no adequate remedy at law. In general, where there is a quantifiable "economic injury" a court will not grant an injunction. In such cases an award of post-trial damages would be sufficient to make the plaintiff whole. *Indiana Port Commission v. Consolidated Grain & Barge Co.*, 701 N.E.2d 882, 887 (Ind. App. 1998); *Xantech Corp. v. Ramco Industries, Inc.,* 643 N.E.2d 918, 921-22 (Ind. App. 1994)

Here, any damages from the allegedly wrongful transfer of the Illinois EPA Permit and any damages from the alleged tortious interference would be quantifiable. For example, if Plaintiff were to prove its case, Plaintiff could recover those expenses it incurred due to the Defendants' wrongful actions. Plaintiff could also show the business it would have had and lost due to the alleged wrongful acts of the Defendants. If Plaintiff cannot show those damages then Plaintiffs have no cause of action for either fraud or tortious interference because both causes of action require that the Plaintiff plead and prove damages. *City of Chicago v. Michigan Beach Housing Cooperative*, 696 N.E.2d 804, 809 (Ill. App. 1st Dist. 1998).

### D.  The balance of equities does not favor equitable relief

Finally, the Plaintiff cannot make a case for equitable relief when the balance of equities is considered. In determining whether the equitable relief would be appropriate, this Court will have to consider the balance of equities or the comparative injury. *Plummer*, 97 F.3d at 229.

Here the balance of equities favors dismissal of the prayer for equitable relief.

Under Illinois law the holder of a permit to develop a waste facility (Defts' Brief in Support Ex. 12) must begin development within two years. (415 ILCS 5/39(k)). Thus, since the Defendants' Permit was issued on March 19, 2014 and would have expired on March 19, 2016

had the Defendants not been engaged in their own development activity. The Plaintiff is therefore asserting that it has a right to Operate the development of the facility, more than two years after the Permit was transferred to Defendants. During that time period, Plaintiffs did nothing to assert whatever rights it might have. Defendants, on the other hand, took action to develop the property, to add value to the property and to preserve the Permit to develop the property.

To argue, at this point, that Plaintiff is seeking to preserve the *status quo ante* misstates the Plaintiff's attempt. Plaintiff is seeking to overturn a transaction its agent agreed to in November, 2013 and to take advantage of the intervening efforts on the part of the Defendants to prepare the site. Under those circumstances there is no conceivable equitable case for the issuance of mandatory equitable relief.

## II. The Plaintiff does not plead fraud with sufficient particularity

In its Response Plaintiff asserts that it does allege fraud with sufficient particularity by reciting many of the allegations of the Complaint and saying that they are sufficiently detailed to support an action alleging fraud.

Under Rule 9(b), a plaintiff "alleging fraud or mistake…must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. Rule 9(b). The purpose of the particularity requirement is "to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2001). A plaintiff ordinarily must describe the "who, what, when where, and how" of the fraud "the first paragraph of any newspaper story." *United States ex. Rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). The level of particularity that must be included in a complaint for fraud will differ based on the facts of the case. *Cincinnati Life Insurance v. Beyrer*, 722 F.3d 939 (7th Cir. 2013).

Nevertheless, a plaintiff must use some means of injecting precision and some measure of substantiation into their allegations of fraud.  *Pirelli*, 631 F.3d at 442 (quoting 2 Moore's Federal Practice § 9.03 [1][b], at 9-18 (3d ed. 2010)).

Greater pre-complaint investigation is warranted in fraud cases because public charges of fraud can harm the reputation of a business or individual.  *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).  Heightened pleading in the fraud context is required in part because of the stigma that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled.  *Pirelli*, 631 F.3d at 442.

Leaving aside the allegations in the Plaintiff's Response and looking only at the Complaint, we will have to analyze the Complaint paragraph by paragraph.  Paragraph 17 alleges that IRRF entered into a Real Estate Contract with Land Management citing Exhibit A.  However, Exhibit A is not signed and not dated.  It appears to have been prepared in September, 2009 and references a Closing Date in of March 30, 2010.  Dates which have long since passed.

The document provides for a Deposit of $43,000.  Paragraph 18 of the Complaint alleges that $43,000 was remitted at that time.  A check is attached as Exhibit B, dated September 11, 2009, made payable to "Chicago Land Management LLC."  The check is purportedly for "option extension payment" on something called "Thorn Creek Ind. Park, Chicago Heights, Ill."  Two other documents appear to be included on Exhibit B.  One appears to be a Receipt dated 9/11/09, which appears to have been signed, voided and reissued.  The other appears to be a Purchaser's Receipt for a Cashier's Check issued by Standard Bank and Trust Co for an undisclosed amount.

The next allegations are that it was Land Management that refuses or failed to close, but that IRRF paid an additional $50,000 to extend the contract.  (Complaint ¶¶ 19-21).  Although there is no Second Real Estate Contract, the Plaintiff attaches as Exhibit C, a check for $50,000

to Land Management.  The check is dated August 18, 2010, 4½ months after the first real estate contract was due to close.  The Complaint does not explain the reason why the Plaintiff needed to pay an additional $50,000 if it was the Defendant that "failed and refused" to close the First Real Estate Contract.  Those two allegations are, at best, inconsistent, at worst, contradictory.

Again, according to the Complaint, Land Management "failed and refused" to close the Second Real Estate Contract.  As a result, says Plaintiff, Plaintiff had to pay another $50,000 to extend the contract until December 31, 2015.  The new contract, called the Third Real Estate Contract (Complaint Ex. D) was dated September 14, 2015, and set December 15, 2015 as the Closing Date.  Land Management received a $50,000 check as a deposit.  (Complaint Ex. E).

Again, the Plaintiff alleges that it was Land Management that failed and refused to close, but that Plaintiff had to pay an additional $50,000 to get the closing extended until July 5, 2016.  The agreement to extend, the Fourth Real Estate Contract, was evidenced by Plaintiff's Exhibit F.  For that extension, allegedly brought about by Land Management's refusal, IRRF had to pay another $50,000.  (Complaint ¶¶ 26-29 and  Ex. G.).

Exhibit F is an email from Thomas Planera, attorney for Robert Fox, to James Ventura, dated January 5, 2015, a year before the Third Real Estate Contract was supposed to close and eight months before the Third Real Estate Contract was even entered into.  This email outlined a proposal regarding a right of first refusal that Fox was willing to give Ventura.  Any such agreement was negated by and merged into the Third Real Estate Contract of September 14, 2015.  The evidence of another $50,000 payment made on or around December, 2015 or January, 2016, alleged to be attached as Exhibit G also contradicts the allegations of the Complaint.  Exhibit G consists of copies of two check stubs, one dated 10/9/08, showing a payment of $10,000 to Land Management for a Deposit option to purchase parcels 3 and 4 of the Thorn

Creek Industrial Park. The other check stub shows a payment dated 8/17/2010, check number 1112, for $50,000 to Land Management for the purchase of 27+ acres at 1301 South State, Chicago Heights, and then states: "Dwn pymt". (Complaint Ex. G). This check stub is for the check attached as Exhibit C. The Plaintiff seeks to get this Court to find that the check paid in August, 2010 was a down payment for the First Real Estate Contract and also evidence of a $50,000 allegedly made in or about December, 2015 or January, 2016.

Clearly, the only fraud evidenced by the use of the January, 2015 email and the August, 2010 check stub is the fraud the Plaintiff is attempting to work on this Court. Further evidencing the Plaintiff's attempted fraud on this Court is Defendants' to its Motion to Quash Exhibit 1 (dkt. #8) in which Gerald Bishop, then an attorney for Plaintiff wrote Thomas Planera, the attorney for Land Management. On January 13, 2016, after the September, 2015 Real Estate Contract expired, Attorney Bishop wrote that his client "has not yet secured the requisite funding to close the contemplated transaction. As such, [his client] will not be in a position to close tomorrow …." Bishop further admitted that he and his client understood that "there may no longer be a contract obligation for [Land Management] to sell [IRRF] the property …." (Defts' Ex. 1).

Plaintiffs allege four times that it was Land Management that failed and refused to close the contract. (Complaint ¶¶ 19, 22, 26 and 29). According to the Plaintiffs' Response the alleged failures or refusals are a part of the Defendants' fraudulent "scheme" to keep the opportunity to purchase the property open while Plaintiff expended funds related to site preparation and, then, ultimately stripping the opportunity to purchase from Plaintiff. (Plntf's Response at 6)

The Complaint goes on to allege that Earth Management, one of the Defendants, and Robert Fox had documents executed on behalf of IRRF without being authorized by IRRF. (Complaint ¶¶ 32-35). It also alleges that Earth Management and Fox "made false threats,

knowing them to be false when made, with intent to induce one M.L. Smith to execute certain documents" on behalf of Plaintiff. (Complaint ¶ 36).  Plaintiffs also allege that the misrepresentations destroyed certain commitments for business.  (Complaint ¶ 37).

As to those allegations, the Complaint does not state, with specificity, what documents were executed, by whom, when, for what purpose or what threats were made to Smith, by whom, when, how they were false and known to be false, and what was the purpose in making the threats.  The Complaint does not allege what business commitments were destroyed.

Specifics are necessary to provide Defendant with sufficient knowledge of the basis of the fraud allegations so that Defendant can answer the Complaint.  Where, as here, many of the allegations alleging fraud are contradicted either by the Plaintiff's Exhibits or by the allegations of the Complaint, there is no basis, and could be no basis, for the allegations of fraud.

### III.   The basis of the fraud claim, even if it was considered, is not sufficient to allege fraud on the part of Robert Fox

Plaintiff has alleged fraud in the Complaint based on allegations that Robert Fox together with Earth Management acted in concert to transfer the Certification for Operating a Waste Management Facility originally owned by IRRF.  (Complaint ¶ 31).  The Complaint continues to state that IRRF never authorized the transfer of the certification to Earth Management, that the authorization was not signed by an agent of IRRF and that Earth Management and Fox knew that no authorized agent of IRRF approved the transfer.  (Complaint ¶¶ 32-34).  Plaintiff continues to allege that Fox made false statements, purporting to act on behalf of IRRF to the Illinois EPA and made threats to M.L. Smith with the intent to induce Smith to execute certain documents as if they were authorized by IRRF.  (Complaint ¶¶ 35-36).  By making these allegedly false statements Fox induced the Illinois EPA to transfer the permit to Earth Management which interfered with the business expectancies of IRRF.  (Complaint ¶¶ 37, 40-45).

Notably, Plaintiff does not provide any of the written documents as Exhibits to the Complaint. Defendants did provide them as Exhibits to their Motion to Dismiss and provided case law support that this Court can consider them because those documents are public record and available from the Illinois EPA. As documents in the public record, this Court can take judicial notice of them for purposes of a Motion to Dismiss. *Henson v. CSC Credit Services, Inc.*, 29 F.3d 280, 284 (7th Cir. 1994); *See also* Defts' Brief in Support at 18-19) (dkt #17). In its Response, Plaintiffs actually rely on Defendants' Exhibits 13 and 14 to assert their argument that it did in fact plead fraud with particularity. (Plntf's Response at 8) (dkt. #22).

Plaintiff ignores that it claims to have pled with particularity while relying on documents that were not even in its Complaint but were submitted by the Defendants. The Documents themselves do not even support the claims of the Plaintiff. Since it is apparent that those are the documents that Plaintiff is relying on, the Plaintiffs claims for fraud and tortious interference should be dismissed with prejudice. The allegations of the Complaint are contradicted by the exhibits which Plaintiff now adopts. The exhibits control. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007); *Wright v. Assoc. Ins. Co., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim.").

Plaintiff that the "ultimate plan" of the Defendants was to "sell the property from under IRRF, with permits in-hand". (Plntf's Response at 6). That allegation was not made in the Complaint, but even if it had been, the allegation of an "ultimate plan" has no merit now, given the dismissal of Count I with prejudice. The selling of the property "from under" IRRF cannot be considered wrongful in the slightest since the record establishes that IRRF had no rights to the property in November, 2013, when the Permit transfer application was made, and had no rights

to the property in after January, 2016 when the Plaintiff could not come up with the money to purchase the property. (*See* Defts' Motion to Quash Ex. 1) (dkt. #8). Since the dismissal with prejudice of Count I Plaintiff can claim no legal right to purchase the property.

Plaintiff's only claim for fraud or tortious interference must be based only on the transfer of the permit, not the refusal to sell the property to Plaintiff. If, as Plaintiff alleges, it was Defendants' ultimate plan to sell the property with "permits in-hand" there can be no wrongful act if the permits were not obtained wrongfully. If the permit was not wrongfully transferred, Plaintiff has no cause of action for fraud or tortious interference and Count II must be dismissed.

Plaintiff asserts, in its Response, that is Defendants' Exhibit 13 (dkt. #17) which establishes that Fox "purported "to be the Manager of Plaintiff in transfer documents before the IEPA …" and that had no Fox and Earth Management not acted in concert and submitted fraudulent documents, as evidenced by Defendants' Exhibits 13 and 14, IRRF would have maintained its right to develop the property. Exhibit 13, dated November 25, 2013, is a "Certification (for a person) For Operating a Waste Management Facility". (*See* Defts' Brief in Support Ex. 13 and 14) (dkt. #17). By its terms it used is to determine if an applicant for a permit has prior experience operating such a facility. The form refers to the "Site Name" and the name of Indiana Recycling is filled in. That site name comes from the previously issued Permit to Indiana Recycling, which is attached to Defendants' Brief in Support as Exhibit 7 (dkt. #17). That Permit was issued October 7, 2011. The IEPA Number on Exhibit 7 matches the IEPA Number on Exhibit 13. Both reference number 0310455284. Thus, Exhibit 13 states the site name of Indiana Recycling as the "site name". Indiana Recycling is not the "Applicant" for the transfer. Indeed, there would be no need for a transfer if Indiana Recycling were the applicant for the transfer, since the Permit was already in the name of Indiana Recycling. Therefore, when

the form states the name of the Applicant, Robert Fox stated that he was the applicant for the transfer.  He also signed as "Owner" because he was the owner of the applicant.  In addition, the street address listed for the Applicant is 17001 S. State Street, which is the business address for Chicago Heights and Earth Management – not Plaintiff.  (*See* Defts' Brief in Support Ex. 12).

Similarly, Exhibit 14, which was signed the same day, reflects Indiana Recycling only as the "Site Name".  That form was prepared for the "Legal Entity" rather than the "Person" as Exhibit 13 is.  Thus, Fox signed as the Owner of the Legal Entity that was the Applicant.

Exhibits 13 and 14, newly relied on by Plaintiff, reference an Applicant and an application process.  In documents not referenced by Plaintiff but supplied by Defendants and executed the same day, November 25, 2013, the Application process becomes clear.

Defendants' Exhibit 8 is the Application for the Transfer of Solid Waste Permits.  The Site Name is Indiana Recycling and the Illinois EPA Number is the same, 0310455284.  The Application is for the "Transfer of both ownership and operating rights".  It shows the then-current owner as "Indiana Recycling (dba Illinois Recycling and Rene [*sic*])".  It shows the new owner as Land Management.  It shows the agent and manager of Indiana Recycling as M.L. Smith.  Smith signed on behalf of Indiana Recycling as Operator and as Owner.  Robert Fox signed on behalf of Chicago Heights Land Management the New Operator and the New Owner.

Defendants' Exhibit 10 is a Certificate of Authenticity of Official Forms, also dated November 25, 2013.  In this form the signators of the transfer documents certify that the forms provided, either in writing or electronically are true and correct.  This was signed by both Fox, on behalf of Chicago Heights Land Management and Smith, on behalf of Indiana Recycling.

The reason for Permit Transfer documents becomes apparent with a review of Defendants' Exhibit 11.  On October 7, 2013, a month and a half before the Transfer Application

documents, the Illinois EPA sent IRRF, in care of M.L. Smith, a Notice of Incompleteness regarding the site in question. The EPA stated that certain documents, evidencing the status of construction and development of the facility, were still needed.

The documents relied on by Plaintiff establish that Fox signed on behalf of Land Management. All of the documents from the Illinois EPA show that the permit transfer application forms were executed on November 25, 2013. Fox signed as owner of the permit transferee, not the permit transferor. M.L. Smith signed on behalf of IRRF, the permit transferor.

Given documents provided, there can be no question that Smith had the authority of IRRF to sign these transfer documents. He was the individual that received the original permit on behalf of IRRF, dated October 7, 2011 (Defts' Ex. 7). He was the individual who advised the Illinois EPA, on IRRF letterhead, of a payment made to the Bureau of Air and of other efforts made on the part of IRRF to pursue construction of the site (Defts' Ex. 9). Smith was the one the Illinois EPA communicated with when they sent the Notice of Incompleteness (Defts' Ex. 11).

In addition, the documents on record with the Indiana Secretary of State establish that Smith was an agent of the LLC in November, 2013. IRRF was organized as an Indiana LLC on May 2, 2008. M.L. Smith was identified as the Registered Agent. (Defts' Ex. 15). In April, 2010 Smith was listed as Registered Agent. (Defts' Ex. 16). Again On May 25, 2011 M.L. Smith was, again, identified as the Registered Agent of the LLC. (Defts' Ex. 17). In September 2013 the LLC was involuntarily dissolved, but was later reinstated, in March 2016. (Defts' Group Ex. 18). According to the affidavit filed in March 2016, the grounds for dissolution did not exist or have been eliminated. (Defts' Group Ex. 18), Therefore, at the time Fox was dealing with Smith, November, 2013, Smith was listed as Registered Agent for the LLC.

The Defendants and the Illinois EPA were justified in relying on the authority of Smith to execute the transfer documents on behalf of IRRF. *See Zahl v.* Krupa, 365 Ill.App.3d 653, 850 N.E.2d 304, 311-12 (2d Dist. 2006) (discussing apparent authority and justifiable reliance); *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210-11 (Ind. 2000) (discussing apparent authority and inherent agency authority of officers of corporation to bind entity).

Plaintiff makes a naked, unsupported and conclusory allegation that Defendants "made false threats, knowing the statements to be false when made, with intent to induce on M.L. Smith to executed [*sic*.] certain documents as purportedly authorized by IRRF, which statement [*sic*.] M.L. Smith relied on to his detriment and that of IRRF …."  (Complaint ¶ 36)  The Plaintiff fails to allege the statement or statements that were made.  Who made the statement or statements.  It is not even consistent in alleging whether there was one statement or more than one statement. The Plaintiff also fails to allege the "when" and "where" of its allegation of fraud, what action Smith took in reliance on the allegedly false statements that were made to him and how that action was the result of the allegedly false statement or statements.

From the record before the Court, there is every basis for finding that Smith was an agent of IRRF being listed with the Illinois EPA as a Vice President of Engineering as well as a Manager.  He was also listed with the Indiana Secretary of State as the Registered Agent.  As such, if Smith signed something he should not have then IRRF would potentially have a cause of action against Smith, but cannot avoid the legal effect of the documents he did sign.

Here, there is no basis for the fraud and tortious interference claims against Defendants. As the publicly available documents show, no claim for fraud or tortious interference can be asserted.  The claims asserted in Count II should, therefore, be dismissed with prejudice.

Dated: October 26, 2016                             Respectfully submitted,

                                                        Chicago Heights Land Management, Inc.
                                                        Earth Management Services of Illinois, Inc.
                                                        and Robert Fox, Defendants


                                            By:     /s/ Parker E. Lawton
                                                     One of the Attorneys for Defendants

Daniel V. Kinsella (ARDC No. 1468472)
David M. Giangrossi (ARDC No. 3124350)
Parker E. Lawton (ARDC No. 6315513)
Schuyler, Roche & Crisham, P.C.
Attorneys for Defendants
180 North Stetson Avenue
Suite 3700
Chicago, IL  60601
Tel:  (312) 565-2400
Fax:  (312) 565-8300
Email: dkinsella@srcattorneys.com
       dgiangrossi@srcattorneys.com
       plawton@srcattorneys.com

910294_1

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused a true and accurate copy of the foregoing **Defendants' Reply in Support of Motion to Dismiss Count II Complaint Pursuant to Rule 12(b)(6)** to be served via email through the court's CM/ECF system and U.S. Mail on October 26, 2016, upon the following counsel of record:

>Kirk A. Pinkerton
>John R. Terpstra
>Hinshaw & Culbertson, LLP
>Attorneys for Plaintiff
>322 Indianapolis Boulevard, Suite 201
>Schereville, IN 46375
>Tel (219) 864-5051
>Fax (219) 864-5052
>Email:  kpinkerton@hinshawlaw.com
>            jterpstra@hinshawlaw.com

By:    /s/ Parker E. Lawton
           One of Defendants' Attorneys

Daniel V. Kinsella
David M. Giangrossi
Parker E. Lawton
Schuyler, Roche & Crisham, P.C.
Attorneys for Defendants
Two Prudential Plaza
180 N. Stetson Avenue, Suite 3700
Chicago, IL 60601
Tel: (312) 565-2400
Fax: (312) 565-8300
Email:  dkinsella@srcattorneys.com
            dgiangrossi@srcattorneys.com
            plawton@srcattorneys.com